**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TROY AUTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1214** |
| **LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS ET AL** | **SECTION "B"(2)** |

<u>**ORDER AND REASONS**</u>

Before the Court are defendants' "Motion for Summary Judgment" (Rec. Doc. 12), plaintiff's response in opposition (Rec. Doc. 14), and defendants' reply (Rec. Doc. 17). For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 12) is **GRANTED IN PART, DISMISSING WITH PREJUDICE** plaintiff's state claims against Warden Robert Tanner, Louisiana Department of Public Safety and Corrections, and Rayburn Correctional Center;

**IT IS FURTHER ORDERED** that the motion is **DENIED IN PART**, retaining plaintiff's Section 1983 claims against Sergeant Robert Goings and Sergeant Lance Wallace.

I.   <u>**FACTS OF THE CASE AND PROCEDURAL HISTORY**</u>

Plaintiff Troy Autin was an inmate housed at Rayburn Correctional Center ("RCC") in Angie, Louisiana. Rec. Doc. 14 at 2. According to defendants, on September 24, 2019, defendant Sergeant Robert Goings entered Wind 2 dormitory and observed Autin engaging in "suspicious behavior" and ordered the latter to open

1

his hand.[1] Rec. Doc. 12-1 at 1. Plaintiff complied and said, "I have nothing but Bible paper" while a small object fell out of his hand as he opened it. *Id.* Goings noticed the fallen item but was unable to locate the object before escorting plaintiff to the Wind Unit Lieutenant's Office. *Id.* After the parties entered the Wind Unit Lieutenant's Office, Goings asked plaintiff if he was carrying any contraband, and plaintiff responded, "I have some pills on me." *Id.* Goings ordered the plaintiff to hand over the pills, and plaintiff bent over and retrieved a balled-up piece of paper from his right sock. *Id.* at 2. While doing this, plaintiff dropped another piece of paper out of his sock which fell on the floor behind him. *Id.* Upon realizing what happened, Autin attempted to grab the paper against Goings' direct verbal orders to stop. *Id.* According to defendants, plaintiff disobeyed these orders when he grabbed the second piece of paper and placed it in his mouth. *Id.* While Goings attempted to call for assistance, he sought to take control of plaintiff's upper torso. *Id.* Plaintiff managed to pull away from Goings' hold and punched him in the neck and shoulder area, causing Goings to lose his balance and drop his radio to the floor. *Id.*

---

[1] In his state complaint, plaintiff alleges that on the date of the incident defendant Goings approached the former and asked him to sell drugs for him at RCC. When plaintiff refused, he claimed that Goings "lost his temper and beat [him] resulting in broken ribs, damage to his neck, and two blackened eyes." Rec. Doc. 14 at 2. This incident was not mentioned in defendants' motion for summary judgment.

According to the state complaint, Goings was the aggressor and placed plaintiff in a choke hold as an attempt to prevent him from swallowing the object. Rec. Doc. 14 at 3. As Goings did this, he allegedly told plaintiff he was going to kill him because plaintiff was a "n*gger lover." *Id.* Further, plaintiff alleged that when Goings lost his composure, Goings began to strike plaintiff in the face with his walkie talkie until he dropped the walkie talkie. *Id.*

Per defendants' motion, plaintiff aggressively approached Goings and struck his upper torso with his palm. Rec. Doc. 12-1 at 2. Goings then regained control of plaintiff and directed him to the floor. *Id.* After Goings called for assistance a second time, he applied pressure to plaintiff's hypoglossal pressure point, after which plaintiff spat out the unknown object.[2] *Id.* According to defendants, plaintiff continuously refused to comply with Goings' orders by physically resisting and attempting to get up until Lieutenant Jonathan Stringer responded to Goings' call. *Id.*

Upon Stringer's arrival, Goings advised that the plaintiff was attempting to swallow an object, and the unknown object was laying on the floor near plaintiff's head. *Id.* At this time, plaintiff moved his head and placed the object in his mouth. *Id.* at 2-3. Stringer took control of plaintiff's right hand and moved

---

[2] Plaintiff alleged that the pressure Goings applied to Autin's neck caused him to pass out. Rec. Doc. 14 at 3.

it away from his mouth, but plaintiff placed his left index finger inside his mouth to push the object to the back of his mouth. *Id.* Then, while verbally ordering plaintiff to comply, Stringer secured plaintiff's left hand with the former's right knee and plaintiff's head with Stringer's left hand. *Id.* Plaintiff then shouted, "It's gone. It's gone," appearing as if he swallowed the object. *Id.*

Captain Truly Dillon responded to Stringer's call and assisted by taking control of plaintiff's legs. *Id.* Stringer ordered plaintiff several times to place his hands behind his back, but plaintiff allegedly resisted these orders by tucking his hands under his body. *Id.* Lieutenant James Seal, Jr. also responded and assisted Stringer in securing plaintiff's hands and applying handcuffs. *Id.* Lieutenant Kelly Amacker also responded and assisted by maintaining control of plaintiff's legs while ordering him to stop resisting. *Id.* At this time, Goings retrieved a set of shackles, and Dillon placed them on the plaintiff's ankles. *Id.* According to defendants, once Autin was properly restrained, he stopped resisting and all use of force ceased. *Id.* After plaintiff was assisted to his feet, he was escorted to Sun Unit by Stringer, Seal and Amacker to be placed in investigative segregation. *Id.*

As plaintiff was being escorted to the Sun Unit on the Sun Walker from the A-Building, plaintiff allegedly lowered his shoulder and attempted to ram his shoulder into Stringer's

midsection. *Id.* Stringer used plaintiff's momentum and directed him to the walk while giving orders to stop physically resisting. *Id.* Per defendants, as plaintiff continued to resist, Seal took control of plaintiff's legs, and Amacker called for assistance via radio. *Id.* While the officers awaited assistance, Amacker directed plaintiff several times to stop physically resisting which were all ignored by plaintiff. *Id.* at 3-4.

When defendant Sergeant Lance Wallace and Sergeant Christopher Dughdrill responded to the scene, Wallace assisted Stringer in securing plaintiff's upper torso while Seal, Amacker and Daughdrill secured his legs. *Id.* at 4. Per defendants, once the officers had control of plaintiff, he once again ceased resisting and was brought to his feet. *Id.* According to plaintiff, once Wallace approached the scene, he began kicking plaintiff's ribs and spine and tried to "rip [plaintiff's] left arm out of [its] socket." *Id.* He further alleged that Wallace and Goings "viciously stomped" on plaintiff, tried to break plaintiff's back and collar bone, broke plaintiff's ribs, gave plaintiff two black eyes, and caused his face to swell. *Id.*

Plaintiff was ordered to walk to Sun Unit, but plaintiff refused and was placed in a reverse transport wristlock by Stringer and Wallace. Rec. Doc. 12-1 at 4. After plaintiff continued to refuse to comply with the officers' orders to walk, Stringer and Wallace applied pressure to plaintiff's wristlock. *Id.* After

applying pressure to the wristlock, plaintiff began to walk, and Stringer and Wallace released pressure. *Id.* Plaintiff was escorted to Sun Unit and was placed in a kneeling position at the Sun Unit Triage door. *Id.* Once plaintiff was in a kneeling position and complied with orders, defendants state that all use of force stopped. *Id.*

Plaintiff alleges to have suffered loss of blood, broken ribs on both sides, numbness in his arms and legs, back pain, two black eyes, and swelling in the right side of his face as a result of the September 24, 2019 incident. Rec. Doc. 14 at 4. Plaintiff also claims that he experienced organ failure and was unable to walk or defecate. *Id.*

As a result of the incident in the Lieutenant's Office, plaintiff received a rule violation report for a rule #1 Contraband, rule #3 Defiance and Rule #5 Aggravated Disobedience. Rec. Doc. 12-1 at 4*.* Likewise, as a result of the incident on Sun Walker, plaintiff received a rule violation report for rule #3 Defiance and rule #5 Aggravated Disobedience. *Id.* After a Post-Use of Force Exam was administered on the officers and plaintiff, it was discovered that the balled up piece of paper that plaintiff retrieved from the floor contained a Neurontin capsule and stripes of white paper that tested positive for synthetic cannabinoids. *Id.*

According to defendants, Autin pled guilty to violations of Rules #1, #3, and #5[3] for his actions in the Lieutenant's Office and was consequently sentenced to a forfeiture of 30 days of good time, transferred to extended lockdown for 90 days, and ordered to pay $18 in restitution for the Post Use of Force Exam. *Id.* Plaintiff was also found guilty for violating Rules #3 and #5 for his actions during the walk to Sun Unit. *Id*. As a result of his conviction, he was sentenced to a forfeiture of 120 days of good time. *Id.*

Colonel Jody Knight reviewed the incident and concluded that all officers involved used the minimum amount of force necessary to gain plaintiff's compliance. *Id.* Knight also concluded that the use of force was "well within the use of force guidelines promulgated by RCC and the DPSC." *Id.*

On March 19, 2020, Autin filed a "Petition for Damages/Use of Force" in the 22nd Judicial District Court for Washington Parish, Louisiana. Rec. Doc. 1-2. Plaintiff alleged to have sustained damages for defendants' excessive force, retaliation, and negligent supervision and hiring. *Id.*

On April 16, 2020, defendants removed the matter to this Court, claiming that this Court has subject matter jurisdiction

---

[3] Plaintiff states in his pleading, "The State Defendants are well aware that Mr. Autin specifically denied pleading guilty to violations of Rule 3 and 5 but appear to be contending the fact that he plead guilty to those charges is undisputed." Rec. Doc. 14 at 6, n. 1.

over plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1441(a). Rec. Doc. 1 at 1-2.

On November 10, 2020, defendants filed the instant motion for summary judgment, generally arguing that plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*. Rec. Doc. 12-1 at 6. Additionally, defendants assert that Sergeant Goings, Sergeant Wallace, and Warden Tanner cannot be sued in their official capacities under Section 1983. *Id.* at 12. Moreover, defendants argue that Warden Tanner cannot be held vicariously liable for the alleged actions of Goings and Wallace under Louisiana Civil Code article 2320 nor can Tanner be found at fault for negligent hiring and/or negligent supervision because he is not their employer. *Id.* at 14-15.

On November 29, 2020, plaintiff timely filed an opposition to summary judgment. Rec. Doc. 14. In general, plaintiff alleges that *Heck* does not bar his claims because he did not allege that his disciplinary charges resulted in a forfeiture of any good time credits or otherwise affected the length of plaintiff's sentence. *Id.* at 14-15. Plaintiff also asserts that evidence of his disciplinary reports is inadmissible hearsay. *Id.* at 16. Moreover, plaintiff argues that Goings and Wallace are "persons" that may be sued under Section 1983 because his allegations against each defendant are for their own individual acts and failures to act. *Id.* at 17.

On December 8, 2020, defendants were granted leave to file a reply to plaintiff's opposition to address two of plaintiff's arguments. Rec. Doc. 17. First, defendants maintain that plaintiff's argument against *Heck* are misplaced because he cites to *Gunnels* wherein the plaintiff's Section 1983 claims did not implicate the validity of his underlying conviction nor the duration of his sentence. *Id.* at 2. Second, defendants argue that plaintiff's disciplinary reports are not inadmissible hearsay because they are only offered to show that the plaintiff was convicted of rule infractions, plaintiff lost good time credit, and the reasoning for the convictions. *Id.* at 4-5.

## II.   LAW AND ANALYSIS

### a. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party.

*United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

### b. *Heck* Bar to Section 1983 Claim

A claimant who pursues a claim under 42 U.S.C. § 1983 must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of law." *Southwestern Bell Telephone, LP V. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *see* 42 U.S.C. § 1983. To determine whether a genuine issue of material fact exists in a Section 1983 claim, the

court must assess if plaintiff's claims are barred by *Heck v. Humphrey*. *Williams v. Lowe*, No. 18-916, 2019 WL 1199100, at *2 (E.D.La. March 13, 2019). If the *Heck* bar applies, then the court must grant summary judgment as there are no genuine issues of material fact. *Id.*

In *Heck*, the Court held that a plaintiff may not challenge the constitutionality of his conviction under Section 1983 unless the conviction has been reversed, expunged, declared invalid or called into question by federal habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction of sentence[.]" *Id.* at 487. If so, the action must be dismissed, "[b]ut if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.*

A court's determination on whether to apply the *Heck* bar is "analytical and fact-intensive, requiring [the court] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

11

The Fifth Circuit further held, "a 'conviction,' for purposes of *Heck*, includes ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards v. Balisok*, 520 U.S. 641, 644 (1997) (applying *Heck* to prisoner's Section 1983 challenge to prisoner's administrative process because it could affect plaintiff's good time credit)). However, the Supreme Court clarified that *Heck* does not categorically apply to all Section 1983 challenges to prison disciplinary proceedings. *Wilkinson v. Dotson*, 544 U.S. 74, 84 (2005). The Court guided that the *Heck* may bar a prisoner's suit "not because it sought nullification of the disciplinary procedures but rather because nullification of the disciplinary procedures would lead necessarily to restoration of good-time credits and hence the shortening of the prisoner's sentence." *Id.*

Here, in support of their motion for summary judgment, defendants offer the disciplinary reports that contain the officers' descriptions of what occurred in the Lieutenant's Office and the Sun Walk. *See* Rec. Docs. 12-4; 12-5. However, plaintiff argues that these reports should be excluded as inadmissible hearsay. Rec. Doc. 14 at 15. Therefore, before we can determine whether the *Heck* bar applies, we must assess the admissibility of the defendants' summary judgment evidence.

i.   <u>Admissibility of the Disciplinary Reports</u>

Plaintiff argues that the disciplinary reports are inadmissible hearsay in violation of the Federal Rules of Evidence. Rec. Doc. 14 at 15. "Hearsay" refers to an out-of-court statement that a party may offer to "prove the truth of the matter asserted." See Fed. R. Evid. 801(c). However, there are several exceptions to the inadmissible hearsay rule, including public records containing "factual findings from a legally authorized investigation." *See* Fed. R. Evid. 803(8)(A)(iii); *see also Henderson v. Turner*, No. 11-39, 2013 WL 442683, at *2 (M.D.La. Feb. 5, 2013).

Disciplinary reports prepared by officers are admissible "only as to the fact findings contained therein that are based on the knowledge or observations of the investigating officer." *Mack v. Benjamin*, No. 13-552-JWD-RLB, 2015 WL 7313869, at *2 (M.D.La. Nov. 20. 2015). Such reports will be excluded if they indicate a lack of trustworthiness, meaning they were prepared in a manner that suggests the conclusions therein cannot be relied upon. *Id.* (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300 (5th Cir. 1991)). However, the court noted that disciplinary reports prepared by officers who are also named defendants "do not fit within the [hearsay] exception because they are often self-serving and are inherently untrustworthy." *Id.*

In *Johnson v. Cain*, the court determined that the disciplinary reports prepared by the defendant prison officers did not fit

within the exception of Rule 803(8)(c) because of their self-serving and inherently untrustworthy nature. No. 09-0454-BAJ-CN, 2011 WL 2437608, at *2 (M.D.La. June 17, 2011). Additionally, the court found that the reports also contained assertions on events that were not personally witnessed by him. *Id.*

Additionally, in *White*, the court excluded the disciplinary reports prepared by the defendant prison officers as inadmissible hearsay due to their inherent untrustworthiness. *White v. Rheams*, No. 15-502-JJB-RLB, 2016 WL 707431, at *3, n. 7 (M.D.La. Feb. 22, 2016); *see Abbott v. Babin*, No. 12-631-JJB-SCR, 2014 WL 173742, at *3 (M.D.La. Jan. 13, 2013)(excluding the physical disciplinary reports related to the plaintiff's excessive force claims). The court further found that the reports written by another prison official was not written pursuant to a legally authorized investigation but for the purpose of documenting the events giving rise to the excessive force claims for some *subsequent* investigation. *Id.*

By contrast, in *Gilbert*, the court determined that the disciplinary reports did not appear to be untrustworthy because they were solely based on the officers' observations at the scene. *Gilbert v. Lessard*, No.:16-00440-BAJ-RLB, 2018 WL 3969950, at *3 (M.D.La. Aug. 20, 2018)(holding that the disciplinary reports fall under the hearsay exception in 803(8)(c)).

If the court excludes the disciplinary report, the report's author may nevertheless testify on "what he personally observed [on the day of the incident],[ ]what he was told by the plaintiff (as non-hearsay admissions by a party-opponent),[ ]fact that the plaintiff was charged with [any] disciplinary violation. . .on that date, and[ ]the matters within their personal knowledge." *Johnson*, 2011 WL 2437608, at *2.

The two disciplinary reports in dispute are defendant Goings' report on the events in the Lieutenant's Office and Lieutenant Stringer's report on the events on the Sun Walk. Rec. Docs. 12-4; 12-5. Defendants argue that the disciplinary reports are admissible because they are only presented to show the plaintiff's convictions, his loss of good time credit, and the reasoning for those convictions. Rec. Doc. 17 at 5.

Plaintiff asserts that the disciplinary report on the Lieutenant's Office incident should be excluded because it was prepared by defendant Goings, which renders the report self-serving and inherently untrustworthy. Rec. Doc. 14 at 16. Both reports indicated that plaintiff's continued defiance to the officers' orders necessitated the use of force. Rec. Docs. 12-4, 12-5. In support of his opposition, plaintiff attached two sworn affidavits by fellow inmates at Rayburn Correctional Center who both testified that the prison officers often order inmates to "stop resisting" to justify their use of force even when the

inmates are not actually resisting. *See* Rec. Doc. 14-3. By submitting these affidavits, plaintiff seemingly avers that Goings misrepresented the need to use force against him.

Notably, plaintiff argues that both disciplinary reports should be excluded for their untrustworthy nature but only one of these reports was prepared by a named defendant. The disciplinary report on the Sun Walk incident was written by Lieutenant Stringer, who is not a defendant in this matter. Plaintiff does not provide any specific evidence indicating that Stringer's report was prepared in an untrustworthy manner. Instead, plaintiff suggests that Stringer's report should be excluded for the same reasons against Goings' report. Rec. Doc. 14 at 17-18.

Although we recognize plaintiff's concerns regarding the veracity of Goings' "stop resisting" order, the Court is not compelled at this stage to exclude the report as wholly unreliable. Moreover, plaintiff failed to demonstrate that Lieutenant Stringer is untrustworthy or otherwise prepared his report in an unreliable manner. Therefore, both disciplinary reports shall be admissible as reliable, subject to later reconsideration of the admissibility of Goings' report.

ii.  <u>Whether *Heck* bars Autin's claims</u>

Defendants argue that plaintiff's allegations about what transpired leading up to the alleged excessive force are inconsistent with the validity of his Rules 1, 3, and 5

disciplinary convictions for the Lieutenant's Office incident and his Rules 3 and 5 convictions for the Sun Walk incident, which subsequently resulted in the loss of good time credit. Rec. Doc. 12-1 at 9-10. Thus, defendants believe that a verdict favoring plaintiff would affect the length of time served or otherwise undermine his disciplinary convictions. *Id.* at 12.

Plaintiff argues *Heck* does not preclude Section 1983 claims that omit to challenge the validity of the underlying conviction or calculation of time to be served. Rec. Doc. 14 at 6. Plaintiff concedes that he lost good time credit as a result of his conviction but maintains that he is neither challenging that loss nor the due process of the disciplinary proceeding. *Id.* Therefore, because he does not seek to invalidate the disciplinary procedure, his conviction, or duration of his sentence, plaintiff argues that a favorable judgment would not be at odds with his conviction. *Id.* at 9.

In *Muhammad v. Close*, the plaintiff brought a Section 1983 action against a corrections officer who allegedly inflicted injuries upon him during a mandated six-day prehearing detention for plaintiff's prison misconduct charge. 540 U.S. 749, 753 (2004) (per curiam). The Court reversed the Sixth Circuit's decision to affirm summary judgment in favor of the defendant[4] because it was

---

[4] "[T]he Sixth Circuit. . .affirmed the summary judgment for Close, though not on the basis recommended by the Magistrate Judge and adopted

premised on "the mistaken view" that "*Heck* applies categorically to all suits challenging prison disciplinary proceedings." *Id.* at 754. The Court acknowledged that the outcome of these proceedings *could* affect the plaintiff's sentence but nonetheless held that *Heck* "is not implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Id.* at 751, 754. Thus, the Court held that a favorable verdict would not threaten the validity of the plaintiff's conviction or sentence because he was only seeking damages for the injuries he sustained during the mandated lockup. *Id.*

The Fifth Circuit also identified certain temporal considerations to determine whether *Heck*'s applicability is proper, including whether the excessive force occurred after the plaintiff ceased resistance and was restrained by officers. *See Bush*, 513 F.3d at 500. In *Bush*, the defendants argued that the plaintiff's allegation that "at no time did [she] resist her arrest" rendered her excessive force claims barred by *Heck* for being inapposite to the factual basis of her criminal proceeding. *Id.* at 498. Although the court acknowledged, "if we were to take this statement at face value, we might agree with the defendants,"

---

by the District Court. Instead of considering the conclusion that Muhammad had produced inadequate evidence of retaliation, <u>a ground that would have been dispositive if sustained</u>, the Court of Appeals held the action barred by *Heck* because Muhammad had sought, among other relief, the expungement of the misconduct charge from the prison record." *Muhammad*, 540 U.S. at 753 (internal citation omitted)(emphasis added).

it ultimately determined that the statement taken in context with other evidence demonstrated that the plaintiff was subject to excessive force after she was restrained. *Id.* at 499. Upon reversing summary judgment, the court noted that the lower court made no findings on how long the plaintiff's resistance lasted or the cause of her injuries – both of which the Fifth Circuit deemed were material facts that were pertinent to her claim. *Id.*

Additionally, in *Bourne,* after plaintiff was found tampering with his cell door, the defendant officers allegedly assaulted him both physically and sexually while attempting to restrain him on his cell floor. *Bourne v. Gunnels.* 921 F.3d 484, 488 (5th Cir. 2019)(holding that *Heck* did not bar the plaintiff's excessive force claims). Although the plaintiff's conviction for tampering with the cell lock and creating a disturbance resulted in a forfeiture of good-time credit, the court held that his excessive force claims were "distinct" from his conviction because the alleged force occurred *after* the plaintiff was already restrained. *Id.* at 491.

Lastly, in *Aucoin*, the plaintiff obscured the view of the surveillance camera in his cell, and when he refused to comply with the defendants' orders, the defendants allegedly sprayed him with a chemical agent before restraining the plaintiff. *Aucoin v. Cupil*, 958 F.3d 379, 381 (5th Cir. 2020), *cert. denied*, --- U.S. ---, 141 S.Ct. 567 (2020). The plaintiff further alleged that when he was taken to the showers, the guards "maced" him and proceeded

19

to beat and kick him in the prison lobby. *Id.* The court determined that *Heck* barred the plaintiff's claim of excessive force in his cell before he was restrained. *Id.* at 383. The court found that the plaintiff's allegation that he was "wholly blameless" for what occurred in his cell was "necessarily inconsistent" with the validity of his conviction of defiance, aggravated disobedience, and property destruction. *Id.* However, because the plaintiff was restrained and compliant during the events thereafter, the court held that the alleged assault in the showers and lobby were not barred by *Heck.*[5] *Id.* at 383-84.

In addition to the disciplinary reports, defendants offer plaintiff's own deposition to show the disparity between the factual basis of his conviction and his factual allegations of his excessive force claims. *See* Rec. Doc. 12-6. When asked to recount the events leading up to the alleged excessive force in the Lieutenant's Office, plaintiff indicated the following:

> Q: So whenever you were in the room, he asked you to give him any drugs you might have on your person, right?
> A: Yes, ma'am.
> Q: And you gave him some drugs that you had on your person?
> A: Yes, ma'am. I gave him some pills.
> Q: And then you asked him if you could leave?
> A: Yes. He told me give me what I have and I could leave.
> Q: All right. You turned to leave?
> A: Yes, ma'am.
> Q: And then he attacked you?

---

[5] "The officers have not suggested, and the prison disciplinary hearing made no finding, that Aucoin was defiant or disobedient while in the showers or lobby. Had he been resisting *throughout* the encounter, this would be a wholly different case." *Aucoin*, 958 F.3d at 384, n. 1.

```
A: Yes, ma'am. He attacked me from the back.
Q: Did you punch him?
A: No, ma'am.
```
**Q: Did you resist any orders at any time?**
**A: No, ma'am.**
. . .
**Q: And you obeyed all of his orders –**
**A: Yes, ma'am. I never once resisted.**

Rec. Doc. 12-1 at 9 (emphasis added). Plaintiff also testified on

what occurred on the Sun Walk:

A: They escorted me, and on the walk, Lieutenant Stringer
said that I got blood on his pants, he don't like getting
blood on his pants. When we got to a certain spot on the
walk, he stepped back or stopped walking or something
and just swung me to the left straight on my face. You
know, I'm – I'm handcuffed and shackled. The only thing
I could do was what they allow me to do. I landed on my
face and they started punching me and kicking me and hit
the beeper.
...
**Q: So you didn't hit any of these officers on the walk?**
**A: No, ma'am. I didn't hit, I didn't resist. I didn't do**
**any – anything like that.**

*Id.* at 10 (emphasis added).

In keeping with the *Bush* Court's guidance against viewing

plaintiff's assertions in isolation, this Court must review them

within the context of other evidence provided by both parties.

During the incident in the Lieutenant's Office, Goings restrained

Autin on the floor of the Lieutenant's Office and called for

assistance while maintaining control of the plaintiff. *See* Rec.

Doc. 12-1 at 2. While restrained on the floor, defendants admitted

that Goings applied pressure to the plaintiff's lower jaw or

"hypoglossal pressure point" to force the plaintiff to spit out

the unknown object. *Id.* After more officers arrived at the scene, Goings placed a set of shackles on plaintiff's ankles, and "once properly restrained, he stopped resisting and all use of force ceased" as he was escorted to the Sun Unit. *Id.* at 3.

When asked about the incident in the Lieutenant's Office, plaintiff testified that Goings put him in a chokehold to the point where he was unable to breathe and momentarily lost consciousness. Rec. Doc. 12-6 at 27-29. Plaintiff further alleged that Goings used his walkie-talkie to hit plaintiff in the face and head. *Id.* at 28. After he regained consciousness, plaintiff testified that Goings placed his bodyweight on his back to maintain control of the plaintiff while continuing to choke and punch him before the other officers arrived at the scene. *Id.* at 30.

Directly prior to the events on the Sun Walk, plaintiff testified that the officers brought him to a doctor to assess his injuries. *Id* at 21-22. He was then escorted to the A Building to be investigated by a high-ranking prison official where he underwent a series of tests while both Stringer and Lieutenant Amacker had their hands on plaintiff's shoulder and hands behind his back. *Id.* at 22. Afterwards, Stringer and Amacker escorted plaintiff to the Sun Walk wherein Stringer reported that plaintiff attempted to ram his shoulder into Stringer's mid-section. Rec. Doc. 12-1 at 3; Rec. Doc. 12-5 at 2. Stringer reported that he used plaintiff's momentum to direct him to continue walking. *Id.*

While plaintiff was allegedly attempting to twist his body away from the officers and ignoring verbal orders to stop, various officers responded to the scene and secured plaintiff's torso and legs. *Id.* at 3-4. Plaintiff was ultimately placed in a reverse transport wristlock and was ordered to get in a kneeling position before all use of force stopped. *Id.* at 4.

When asked if he ever tried to escape during the events on the Sun Walk, plaintiff testified, "there was nothing I could do but what they allowed me to do," meaning that his movements were entirely controlled by Stringer and Amacker.[6] Rec. Doc. 12-6 at 40. Plaintiff further alleged that the excessive force began shortly after Stringer swung him to the left and was brought to the ground wherein the officers allegedly began to punch and kick him. *See id.* at 39-42.

Like *Bush*, at face value, plaintiff's assertion denying any resistance to the defendants' orders appears inconsistent with the factual basis for his disciplinary violations. However, when viewed within his deposition in its entirety, plaintiff adequately alleged a claim for excessive force that occurred after he was restrained during both incidents, as occurred in *Bourne*. Specifically, during the Lieutenant's Office incident, the alleged

---

[6] Autin further testified, "If they twisted me to the left or twist me to the right, that's the only thing I can do is what they allow me to do. I'm pushed forward, with my hands pulling back, with their arms on each shoulder, walking on my tippy toes. There's nothing I could do to hurt anybody or resist in any type of way." Rec. Doc. 12-6 at 40.

force used by Goings to prevent plaintiff from swallowing the unknown object occurred after Goings already restrained plaintiff to the ground. Moreover, the evidence indicates that Autin was restrained throughout the events on the Sun Walk.

There is barely sufficient evidence to demonstrate that the alleged excessive force occurred after plaintiff was adequately restrained by the officers. Because genuine issues of material fact exist as to whether plaintiff consistently resisted defendants' orders and whether the use of force was appropriate, summary disposition under *Heck* would not be appropriate at this stage.

**c. Persons Capable of Being Sued under Section 1983**

i. <u>Sergeant Goings and Sergeant Wallace</u>

Defendants further argue that each defendant is not a "person" who can be subject to suit under 42 U.S.C. § 1983. Rec. Doc. 12-1 at 13. The statute imposes personal liability against an individual who deprives another of his constitutional right, including a government official for actions taken under color of law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 58 (1989); *Scheurer v. Rhodes*, 416 U.S. 232, 238 (1974)(overruled for other reasons). However, unlike personal capacity suits, Section 1983 official capacity suits are expressly excluded because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

24

office." *Will*, 491 U.S. at 71; *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985)(quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1989))("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'")

Defendants argue that Sergeant Goings, Sergeant Wallace, and Warden Tanner may not be sued in their official capacity because they are state employees and that the claims against them should be dismissed with prejudice. Rec. Doc. 12-1 at 13-14. Plaintiff contests that he sued the defendants in their official capacity and responds that the allegations raised against each defendant are their own individual acts and failures to act. Rec. Doc. 14 at 17. Nonetheless, plaintiff argues that even if official capacity claims were raised to the extent that the defendants are claiming Eleventh Amendment immunity, they effectively waived immunity when they removed the matter to federal court. *Id.* at 17-18.

When the complaint does not clearly indicate whether the state defendant is being sued in his individual or official capacity, "the course of the proceedings and allegations will determine the applicable capacity." *Graham*, 473 U.S. at 167, n. 14. To state a Section 1983 claim against a government official in his personal capacity, the claimant must establish that "the defendant was either personally involved in the deprivation or that his wrongful

actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

In his state complaint, plaintiff pled that Goings and Wallace violated his Eighth Amendment right against excessive force through their "extreme and outrageous" conduct. Rec. Doc. 1-2 at 7. Plaintiff's factual allegations therein indicate that Goings choked and beat him outside the Lieutenant's Office, Wallace kicked Autin in his ribs and spine on the Sun Walk, and both defendants stomped on Autin to inflict further injuries. *Id.* at 4-5.

Based on the factual allegations set forth against Goings and Wallace in his complaint, plaintiff alleged that Goings and Wallace acted under color of law as prison officers to use excessive force against him in violation of the Eighth Amendment. The course of proceedings and allegations indicate that Wallace and Goings are being sued in their individual capacities because the complaint contains allegations that are specific to the defendants' alleged actions and not generally aimed at the state entity. Therefore, the excessive force claims against Goings and Wallace may proceed at this time.

    ii.  <u>Warden Tanner</u>

As an alternative cause of action to his Section 1983 claim, plaintiff alleges that Warden Robert Tanner was negligent in failing to train and supervise his officers regarding the proper

use of force.[7] Rec. Doc. 1-2 at 8. Defendants argue that Tanner is not a proper party to plaintiff's negligent training and supervision and vicarious liability claims because these claims hold employers liable, which in this matter would be the State of Louisiana and not Warden Tanner. Rec. Doc. 12-1 at 14. To be clear, plaintiff's respondeat superior claim seeks to hold the State vicariously liable for the negligent actions of its employee Warden Tanner, who allegedly failed to adequately train and supervise the correctional officers. Rec. Doc. 1-2 at 8. Goings and Wallace are not named defendants in these claims.

A claim for negligent hiring and supervision is analyzed under the same duty-risk standard for all negligence claims in Louisiana. *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. 3/24/09); 10 So.3d 283, 287-88. This standard requires proof of duty, breach of duty, causation, scope of liability or protection, and damages. *Id.* at 288. As such, Louisiana courts may hold a supervisory employee liable "where he negligently created or negligently failed to correct a dangerous condition of which he was or should have been aware under the circumstances." *Fabre v. Travelers Ins. Co.*, 286 So.2d 459, 464 (La.App. 1 Cir. 1973).

---

[7] Defendants argue that Tanner cannot be sued in his official capacity under Section 1983, but plaintiff only brought a state claim against Tanner for negligent hiring and supervision. Rec. Doc. 12-1 at 13; *see* Rec. Doc. 1-2 at 7-8. Therefore, defendants' "official capacity" argument should be disregarded.

Plaintiff alleges that Tanner's failure to supervise and train the correctional officers created an "atmosphere of violence between guards and inmates." Rec. Doc. 1-2 at 6. He further claims that Tanner ignored reports of assaults, which resulted in ongoing violence at RCC. *Id.* Although plaintiff offers evidence indicating a pattern of unprovoked violence by the officers, nothing in his deposition or sworn affidavits support the allegation that Tanner was aware of these assaults yet failed to correct the officers' violent tactics.

Because plaintiff failed to provide evidence of Tanner's negligent training and supervision, summary judgment is warranted, and his state claims against Tanner must be dismissed with prejudice. Furthermore, because Tanner cannot be found negligent in this matter, the Department of Public Safety and Corrections and Rayburn Correctional Center cannot be deemed vicariously liable for Tanner's conduct. Therefore, plaintiff's state respondeat superior claims must also be dismissed with prejudice.

New Orleans, Louisiana this 30th day of March, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE